**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

BRIAN SCOTT PIATT,                                    3:10-CV-00932-BR

        **Plaintiff,**                              OPINION AND ORDER

v.

MARK NOOTH, JAMIE MILLER,
JAMIE HERRERA, K. JACKSON,
FRANK SERRANO, LESLIE CONE
and JOHN RICHARDSON,

        **Defendants.**


BRIAN SCOTT PIATT
1751 Evergreen Avenue, N.E.
Salem, OR 97301

        Plaintiff, *Pro Se*

ELLEN ROSENBLUM
Attorney General
SHANNON M. VINCENT
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#140) for Summary Judgment.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.


## BACKGROUND

On August 3, 2008, Plaintiff Brian Scott Piatt was incarcerated at Snake River Correctional Institution (SRCI) in the "privileged housing" unit.  The privileged housing unit at SRCI is for inmates with, among other things, 12 months of "clear conduct" in the general population, two or fewer disciplinary reports in the prior 12 months, and three or fewer "performance failures" within the previous 90 days.  Inmates in the privileged housing unit are allowed to leave their cells at any time during the day.  Decl. of Leslie Cone at ¶ 4.  To leave their cells, inmates "push[] a call button and the housing officer opens the cell door."  *Id.*

Plaintiff and another inmate on the privileged housing unit, John Richardson, knew each other.  On August 8, 2008, Defendant Correctional Officer Leslie Cone saw Richardson "come down from his cell on the second tier and stop in front of [Plaintiff's] cell 18, almost entering the cell."  Cone Decl. at ¶ 5.  At that point Cone closed the door of cell 18.  Cone heard Richardson say to Plaintiff:  "Come on out, we are going to settle this shit

2 - OPINION AND ORDER

tonight."  Jt. Statement of Agreed Facts at 2.

Cone testifies in her Declaration that during the six months she worked as a correctional officer prior to August 3, 2008, she "witnessed [Plaintiff] and . . . Richardson eat meals together, play games, and watch television together.  They talked to each other every day."  Cone Decl. at ¶ 6.  Cone testifies she "heard . . . Richardson say the same comment and similar comments to [Plaintiff] numerous times.  Since the comment on August 3, 2008, was typical, normal conversation between the two, [she] did not address the issue other than to close the door of cell 18."  Id. Plaintiff testifies in his Declaration that he "did not interact at all [with Richardson] as defendant Cone has stated in her declaration. . . .  Prior to [August 3, 2008], [Plaintiff] had never spoke to Richardson, except for one incident that occurred approximately two weeks prior."  Decl. of Plaintiff at ¶ 4. After Cone closed the door of cell 18, Richardson went to the Day Room and sat there "staring at [P]laintiff's cell with clenched fists."  Jt. Statement of Agreed Facts at 2.

"Later, after line movement was secure, [P]laintiff pushed the button requesting that his cell door open so he could exit his cell."  Id.  Cone testifies in her Declaration that "[t]his typically happens at this time of night so that [Plaintiff] can get water for the evening."  Cone Decl. at ¶ 8.

After exiting his cell Plaintiff went to the Day Room and

3 - OPINION AND ORDER

met with Richardson.  They both then went to the television room.
Plaintiff testifies in his Declaration that he and Richardson
were standing in the doorway of the television room, which was in
direct view of Cone, but another inmate wanted to enter the
television room.  Plaintiff and Richardson stepped "out of the
way so he could enter, which placed [them] out of direct sight of
[Cone]."  Pl.'s Decl. at ¶ 12.  Plaintiff testifies he spoke to
Richardson, but he realized "Richardson was not going to be
reasonable."  *Id*.  Plaintiff, therefore, said good night and
turned to leave the television room.  *Id*.  At that point
Richardson struck Plaintiff.

    Cone testifies in her Declaration that through a mirror on
the wall of the television room she saw Richardson raise his hand
with a closed fist and hit Plaintiff in the face.  She also saw
Plaintiff raise his hands and push Richardson.  Plaintiff
testifies in his Declaration that he raised his hands "in a
defensive manner merely to keep [Richardson] from connecting with
any further punches.  Unfortunately, this proved ineffectual, so
[Plaintiff] grab[bed] Richardson and [held] on to him as he
continued throwing punches."  Pl.'s. Decl. at ¶ 13.  Cone called
for a response team as she went towards the television room.
Plaintiff testifies in his Declaration that after Cone called for
a response team, Plaintiff pushed Richardson away from him "but
he had ahold of [Plaintiff's] shirt and as [Plaintiff] pushed him

away . . ., it tore." *Id*. at ¶ 14.  When Cone reached the
television room, she ordered Plaintiff and Richardson to stop
fighting.  *Id*.  Richardson responded they were not fighting and
had only been playing ping-pong.  *Id*.

Cone ordered Richardson into the hallway corridor.  Cone
testifies in her Declaration that she ordered Plaintiff to sit at
a table in the Day Room that was outside of the television room.
Although Plaintiff testifies in his Declaration that Cone ordered
him out of the television room, he states Cone did not order him
to sit at a table in an area outside the television room, and, in
fact, such an order would not have been possible because "[t]he
area just outside the T.V. room is the location of the unit
showers and no tables exist there."  Pl.'s Decl. at ¶ 17.

Cone testifies in her Declaration that Plaintiff did not
comply with her order to sit at a table in the Day Room and
instead "walked quickly up behind me, talking the whole time."
Cone Decl. at ¶ 12.  Cone testifies she was between Richardson
and Plaintiff and

> [w]hen . . . Richardson reached the inside
> entrance to the unit (crash gate), he stopped at
> the crash gate and turned towards me with closed
> fists as if he were going to hit me.  I stepped
> back and said something to the effect "Don't even
> think about it."  By this time, [Plaintiff] was
> within arm's length of . . . Richardson. . . .
> Richardson turned toward [Plaintiff] and hit him
> on the left side of his face with a closed fist.
> [Plaintiff] was knocked unconscious. . . .  I
> called Medical response. . . .  Richardson said,
> "Adios motherfucker, good night."  He saluted

5 - OPINION AND ORDER

> [Plaintiff] and walked out into the hall, where he
> was restrained and escorted to DSU.

Cone Decl. at ¶ 13.  Plaintiff testifies:

> [T]here was never a moment that [Cone] separated
> us.  Officer Cone (Wilson) waited for both
> Richardson and I to leave the T.V. room and
> followed behind me.
>
> As . . . Richardson approached the exit door of
> the dayroom (crash gate), . . . he turned and
> again attacked me, knocking me unconscious.

Pl.'s Decl. at ¶¶ 19-20.  At Plaintiff's disciplinary hearing

before SRCI Hearings Officer Frank Serrano, Richardson testified:

"And at that time [Cone] said you guys get your asses out in the

hallway.  I walked out in the hallway and [Plaintiff] was behind

me and [Cone] was behind him.  And I stopped and turned and

punched [Plaintiff]."  Plaintiff Decl., Ex. 1 at 14.

On August 4, 2008, Cone issued a Misconduct Report charging

Plaintiff with violations of Department of Corrections (DOC)

Rules prohibiting Assault I, Disrespect I, and Disobedience of an

Order I.  Plaintiff received a copy of the Misconduct Report, a

Notice of Hearing, a Notice of Right to a Hearing, and a copy of

the DOC Rules of Prohibited Inmate Conduct on August 5, 2008.

On August 7, 2008, Serrano held a disciplinary hearing on

the charges against Plaintiff.  At the hearing Plaintiff

requested an investigation and witness interviews.  Serrano

denied Plaintiff's requests because Plaintiff "could not say what

the witness called would say in support of [P]laintiff's

position."  Jt. Statement of Agreed Facts at 3.  Specifically,

Serrano explained in his Findings of Fact, Conclusions, and Order

that he denied Plaintiff's request for an investigation because

Plaintiff

> wanted to call one witness, who he was unsure
> would provide information that may or may not
> absolve him of wrongdoing or substantially
> mitigate the rule violation.  [Plaintiff] was not
> sure his witness saw the incident or could provide
> information that he was not involved in the fight.

Decl. of Frank Serrano, Ex. 2 at 1.

On August 8, 2008, Serrano issued Findings of Fact,

Conclusions, and Order in which he found Plaintiff guilty of

Assault II and Disrespect I.  *Id*. at 2.  Serrano dismissed the

charge of Disobedience of an Order I on the ground that Plaintiff

"complied with the orders given to him." *Id*.  Serrano sanctioned

Plaintiff with 35 days in disciplinary segregation, 14 days of

lost privileges, and a fine of $50.

On August 9, 2010, Plaintiff filed a *pro se* Complaint

pursuant to 42 U.S.C. § 1983 in which he alleged Mark Nooth,

Jamie Miller, Serrano, Brad Cain, Cone, and Richardson violated

his rights under the Eighth Amendment to the United States

Constitution, violated his Fourteenth Amendment right to due

process, committed assault and battery, and subjected him to

intentional infliction of emotional distress (IIED).

On December 30, 2011, the Court appointed Rankin Johnson as

counsel for Plaintiff.

7 - OPINION AND ORDER

On March 28, 2012, counsel for Plaintiff filed a Third
Amended Complaint in which Plaintiff includes Nooth, Miller,
Jamie Herrera, K. Jackson, Serrano, and Cone in the section
titled "Defendants."  Nevertheless, Plaintiff asserts a claim
only against Richardson in his First Cause of Action for assault
and battery.  Elsewhere in his Third Amended Complaint, Plaintiff
also asserts a claim against Cone for violation of his rights
under the Eighth Amendment and a claim against Serrano for
violation of his Fourteenth Amendment right to due process.

On April 23, 2012, the Court granted Rankin Johnson's Motion
to Withdraw.  Plaintiff has proceeded *pro se* since April 23,
2012.

On February 14, 2013, State Defendants (*i.e.*, Defendants
other than Richardson) filed a Motion for Summary Judgment.[1]  The
Court took this matter under advisement on November 12, 2013.


## STANDARDS

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." *Washington Mut. Ins. v. United
States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R.

---

[1] On February 19, 2013, the Court issued a Summary Judgment
Advice Notice to Plaintiff advising him that if he did not submit
evidence in opposition to Defendants' Motion for Summary
Judgment, summary judgment would be entered against him if it was
appropriate.

Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id*.  "This burden is not a light one. . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment."  *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)

(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989)).  When the nonmoving party's claims are factually
implausible, that party must "come forward with more persuasive
evidence than otherwise would be necessary." *LVRC Holdings LLC
v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense
determines whether a fact is material. *Miller v. Glenn Miller
Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

State Defendants move for summary judgment on Plaintiff's
claims for violation of the Eighth and Fourteenth Amendments on
the grounds that (1) Plaintiff did not plead any facts
establishing personal participation in the alleged violations by
any Defendants other than Cone and Serrano and (2) State
Defendants did not violate Plaintiff's constitutional rights.

**I.  Plaintiff has not alleged facts sufficient to establish
    personal participation by Defendants other than Cone and
    Serrano.**

To establish a claim under § 1983 against an individual
defendant, a plaintiff must plead facts sufficient to show
personal participation in the alleged constitutional deprivation
by each defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

10 - OPINION AND ORDER

(2009)("Because vicarious liability is inapplicable to . . .
§ 1983 suits, a plaintiff must plead that each Government-
official defendant, through the official's own individual acts,
has violated the Constitution.").  *See also Zellmer v.
Constantine*, 520 F. App'x 564, 565 (9th Cir. 2013)("The district
court properly dismissed defendant Constantine because Zellmer
failed to show that Constantine had any personal involvement in
the alleged violations."); *Arizmendi v. City of San Jose*, No.
5:08-CV-05163 EJD, 2012 WL 5471152, at *4 (N.D. Cal. Nov. 9,
2012)("A plaintiff must establish "integral participation" of the
individual officer in the alleged constitutional violation.
Summary Judgment, therefore, is proper when there is no question
of fact or dispute that specific individual defendants did not
participate personally in an allegedly unconstitutional search."
(citations omitted.)).

In addition, "'[a] supervisor is only liable for
constitutional violations of his subordinates if the supervisor
participated in or directed the violations, or knew of the
violations and failed to act to prevent them.  There is no
*respondeat superior* liability under section 1983.'"  *Torlucci v.
Norum*, 509 F. App'x 636, 637 (9th Cir. 2013)(quoting *Taylor v.
List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Plaintiff does not allege any facts in his Third Amended
Complaint or point to any facts in the record on summary judgment

11 - OPINION AND ORDER

that show any personal participation by Defendants Nooth, Miller,
Herrera, or Jackson in the alleged violations of his
Constitutional rights.  To the extent that Plaintiff alleges
these Defendants are liable because they are supervisors, as
noted, there is not any *respondeat superior* liability under
§ 1983 and Plaintiff does not point to any facts on the record
that establish Defendants Nooth, Miller, Herrera, or Jackson
directed the alleged violations or knew about the alleged
violations and failed to act to prevent them.

Accordingly, the Court grants State Defendants' Motion for
Summary Judgment as to Plaintiff's claims against Defendants
Nooth, Miller, Herrera, or Jackson.

## II.  Plaintiff's Eighth Amendment Claim

Plaintiff asserts Cone violated Plaintiff's Eighth Amendment
right to be free from cruel and unusual punishment because she
failed to protect Plaintiff from the attack by Richardson.

The Supreme Court held in *Farmer v. Brennan* that "'prison
officials have a duty . . . to protect prisoners from violence at
the hands of other prisoners.'"  511 U.S. 825, 833 (quoting
*Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st
Cir. 1988)).  In *Farmer* the Court noted:

> Having incarcerated persons [with] demonstrated
> proclivit[ies] for antisocial criminal, and often
> violent, conduct, [and] having stripped them of
> virtually every means of self-protection and
> foreclosed their access to outside aid, the
> government and its officials are not free to let

12 - OPINION AND ORDER

> the state of nature take its course. . . .  Prison
> conditions may be "restrictive and even harsh, but
> gratuitously allowing the beating or rape of one
> prisoner by another serves no legitimate
> penological objectiv[e] any more than it squares
> with evolving standards of decency.  Being
> violently assaulted in prison is simply not part
> of the penalty that criminal offenders pay for
> their offenses against society."

511 U.S. at 833-34 (internal quotations and citations omitted).

Nevertheless, "every injury suffered by one prisoner at the hands

of another [does not] translate[] into constitutional liability

for prison officials responsible for the victim's safety."  *Id.*

at 834.  The Court in *Farmer* specifically rejected the

petitioner's argument that "*Canton [*v. *Harris*, 489 U.S. 378

(1989)] compels the conclusion . . . that a prison official who

was unaware of a substantial risk of harm to an inmate may

nevertheless be held liable under the Eighth Amendment if the

risk was obvious and a reasonable prison official would have

noticed it."  *Id.* at 841-42.  The Court concluded

> a prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official
> knows of and disregards an excessive risk to
> inmate health or safety; the official must both be
> aware of facts from which the inference could be
> drawn that a substantial risk of serious harm
> exists, and he must also draw the inference. . . .
> [A]n official's failure to alleviate a significant
> risk that he should have perceived but did not,
> while no cause for commendation, cannot under our
> cases be condemned as the infliction of
> punishment.

*Id.* at 837 (internal citations omitted).

13 - OPINION AND ORDER

State Defendants contend they are entitled to summary judgment on this claim because Plaintiff has not alleged any facts sufficient to establish that Cone was aware Richardson posed an excessive risk to Plaintiff's safety or that Cone deliberately disregarded that risk. Specifically, State Defendants assert Richardson was housed in the privileged unit, which indicates he had at least 12 months of "clear conduct" in the general population, two or fewer disciplinary reports in the prior 12 months, and three or fewer "performance failures" within the previous 90 days. According to State Defendants, therefore, there was not any reason for Cone to believe Richardson was a violent or aggressive inmate. State Defendants also point to Cone's testimony that although Richardson said "Come on out, we are going to settle this shit tonight," Richardson and Plaintiff were friends and that kind of exchange between them was not unusual. Finally, State Defendants note Cone testified she placed herself between Richardson and Plaintiff after the altercation, and she could not have anticipated Richardson would reach around her to punch Plaintiff.

Plaintiff, however, testifies in his Declaration that he and Richardson were not friends, they did not regularly interact, and Richardson had never said anything to him similar to "come on out, we are going to settle this shit tonight" before their altercation. Plaintiff also points out that it is undisputed

that Cone closed Plaintiff's cell door, Cone saw "Richardson
. . . [go and sit] in the Day Room staring at [P]laintiff's cell
with clenched fists," after Richardson told Plaintiff to come out
of his cell.  Jt. Statement of Agreed Facts at 2.  According to
Plaintiff, therefore, although Richardson might not have been
considered to be a dangerous inmate generally, it should have
been clear to Cone that Richardson was upset or angry and, at the
very least, seeking to engage Plaintiff in a hostile manner.
Plaintiff asserts DOC rules also prohibit inmates from loitering
outside cells not assigned to them.  Finally, Plaintiff testifies
in his Declaration that Cone did not place herself between
Plaintiff and Richardson when they were exiting the television
room even though she had just broken up a physical altercation
between them, and, therefore, Cone left Plaintiff open to
continued violence by Richardson at a time when he had just
demonstrated his proclivity to harm Plaintiff.  As noted,
Richardson also testified at Plaintiff's disciplinary hearing
that Cone did not place herself between Plaintiff and Richardson
when they exited the television room.

     On this record the Court concludes Plaintiff has established
a genuine dispute of material fact exists as to whether Cone
should have known of an excessive risk to Plaintiff's safety and
whether she disregarded that risk when Richardson told Plaintiff
to come out of his cell to settle "this shit tonight" and sat

staring at Plaintiff's cell with his hands clenched.  Plaintiff
has also established a genuine dispute of material fact exists as
to whether Cone knew about and disregarded the risk to
Plaintiff's safety by allegedly failing to place herself between
Plaintiff and Richardson after their altercation when they exited
the television room.

Accordingly, the Court denies State Defendants' Motion for
Summary Judgment as to Plaintiff's Eighth Amendment Claim against
Cone.

**III. Plaintiff's Due Process claim**

Plaintiff asserts Serrano violated Plaintiff's Fourteenth
Amendment right to procedural due process at his August 2008
disciplinary hearing when Serrano denied Plaintiff's request to
call witnesses and his request for an investigation.

In *Wolff v. McDonnell* the Supreme Court set out the basic
procedural due-process guarantees applicable to prison
disciplinary hearings.  418 U.S. 539, 563-72 (1974).  Among those
guarantees are the right to call witnesses.  *Id.* at 566.  *See
also Serrano v. Francis,* 345 F.3d 1071, 1077 (9th Cir. 2003)
("Such [due-process] protections include the right[] to call
witnesses.").  The Supreme Court, however, made clear in *Wolff*
that the right of an inmate to call witnesses at a disciplinary
hearing is not unlimited.  Prison officials may refuse an
inmate's request to call witnesses "for irrelevance, lack of

16 - OPINION AND ORDER

necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. *See also Paliotta v. McDaniel*, 510 F. App'x 501, 501 (9th Cir. 2013)(same).

Here Plaintiff submitted a request before the hearing for numerous witnesses who, according to Plaintiff, would testify that Plaintiff did not intend to fight with Richardson when Plaintiff left his cell, that Plaintiff seemed confused after the fight, and that Plaintiff's hands did not appear to be marked up after the fight. Serrano denied Plaintiff's request on the ground that these witnesses were not relevant to the issue whether Plaintiff engaged in an altercation with Richardson. As Serrano noted at the hearing, the DOC Rule for Assault I "doesn't speak to intent[]" to fight, and, therefore, witnesses who might testify to whether Plaintiff intended to fight with Richardson before Plaintiff entered the television room were irrelevant to whether Plaintiff actually actively engaged in the altercation with Richardson in violation of the DOC Rule governing the Assault I charge.

On this record the Court concludes Serrano complied with the due-process requirements set out in *Wolff* and, therefore, did not violate Plaintiff's procedural due-process rights when he refused to allow Plaintiff to present a witnesses whose testimony was irrelevant to the rules violations with which Plaintiff was charged.

17 - OPINION AND ORDER

As to Plaintiff's claim that he was denied procedural due process because Defendants denied his request for a prehearing investigation, *Wolff* "does not require prison officials to conduct an investigation in a certain manner or pursuant to the request of an inmate." *Henderson v. Schoville*, No. CV 00-12616-MMM (JEM), 2010 WL 342596, at *8 (C.D. Cal. Jan. 28, 2010) (citing *Arguijo v. Dennis*, No. 07-CV-1908-BR, 2009 WL 393957 at *3 (D. Or. Feb. 2, 2009)). *See also Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995)(inmates do not have any "federal due process right to a prehearing investigation"); *Brown v. Frey*, 889 F.2d 159, 170-71 (8th Cir. 1989)(there is not a "clear constitutional right to an 'adequate investigation'" in the context of prison disciplinary proceedings).

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for violation of his procedural due-process rights.

## IV.  Qualified Immunity

State Defendants contend they are also entitled to qualified immunity.[2]  "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate

---

[2] The Court already has concluded Serrano did not violate Plaintiff's due-process rights under the Fourteenth Amendment. The Court, therefore, does not address State Defendants' qualified immunity argument as to that claim.

clearly established statutory or constitutional rights of which a reasonable person would have known." *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010).  Qualified immunity shields a government official "from suit when he or she 'makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted.'"  *Smith v. Almada*, 623 F.3d 1078, 1083-84 (9th Cir. 2010)(quoting *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004)).

The Ninth Circuit uses "a two-step analysis to determine whether the facts show that:  (1) the conduct of the [defendants] violated a constitutional right; and (2) the right that was violated was clearly established at the time of the violation." *Huff v. City of Burbank*, No. 09-55239, 2011 WL 71472, at *6 (9th Cir. Jan. 11, 2011)(citing *Saucier*, 533 U.S. at 201).

It is clearly established that deliberate failure to protect prisoners from violence at the hands of other prisoners is a violation of the Eighth Amendment.  In addition, the Court has concluded Plaintiff has established a genuine dispute of material fact exists as to whether Cone deliberately failed to protect Plaintiff from violence by Richardson.  The Court, therefore, cannot conclude as a matter of law at this time that Cone is entitled to qualified immunity because there is a fact issue as to whether Cone violated Plaintiff's Eighth Amendment rights.

19 - OPINION AND ORDER

**<u>CONCLUSION</u>**

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion (#140) for Summary Judgment.

IT IS SO ORDERED.

DATED this 17th day of January, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER